# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### EASTERN DIVISION

LARRY C. WHITE

        Claimant,

vs.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

        Commissioner.

No. 18-CV-2005-LTS

**REPORT AND RECOMMENDATION**

_____

    Claimant, Larry C. White ("Claimant"), seeks judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-34. Claimant contends that the Administrative Law Judge ("ALJ") erred in determining that he was not disabled. For the reasons that follow, I recommend that the District Court reverse and remand the Commissioner's decision.

## I.    BACKGROUND

    I adopt the facts set forth in the Parties' Joint Statement of Facts (Doc. 10) and only summarize the pertinent facts here. This is an appeal from a denial of disability insurance benefits ("DIB"). Claimant was born on April 15, 1970. (AR[1] at 138.) Claimant started tenth grade, but did not finish. (*Id.* at 29-30.) The ALJ found Claimant "has a limited education and is able to communicate in English." (*Id.* at 17.) Claimant allegedly became disabled due to various disc and joint diseases and problems on December 18, 2013 when he was 43 years old. (*Id.* at 138, 171.) He was 46 years old at the time of the ALJ's original decision. (*Id.* at 7-25.) Claimant filed his initial claim

---

[1] "AR" cites refer to pages in the Administrative Record.

on September 25, 2014. (*Id.* at 138-39). Claimant was initially denied benefits on December 30, 2014. (*Id.* at 71-74.) Claimant filed for reconsideration on January 18, 2015 and was again denied on February 4, 2015. (Id. at 75, 77-80.) Claimant filed a Request for Hearing on February 27, 2015. A video hearing was held on February 14, 2017 with Claimant; his attorney; and hearing monitor, Ann Zimba, in Waterloo, Iowa and ALJ Ray Souza and a vocational expert in Kansas City, Missouri. (*Id.* at 28-49, 82-83.) Claimant and the vocational expert both testified. (*Id.* at 29-48.)

The ALJ issued his decision denying Claimant benefits on March 22, 2017. (*Id.* at 7-19.) On May 4, 2017, Claimant filed a Request for the Appeals Council to review the ALJ's decision. (*Id.* at 128-37.) On December 5, 2017, the Appeals Council found there was no basis to review the ALJ's decision. (*Id.* at 1-5.) Accordingly, the ALJ's decision stands as the final administrative ruling in the matter and became the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481.

On January 29, 2018, Claimant timely filed his complaint in this Court. (Doc. 1.) By October 1, 2018, the Parties had filed their briefs. On October 2, 2018, the Honorable Leonard T. Strand, Chief United States District Court Judge, referred the case to me for a Report and Recommendation.

## II.    DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant has a disability when, due to physical or mental impairments, the claimant

> is not only unable to do [the claimant's] previous work but cannot, considering [the claimant's] age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). A claimant is not disabled if he is able to do work that exists in the national economy, but is unemployed due to an inability to find work, lack of options in the local area, technological changes in a particular industry, economic downturns, employer hiring practices, or other factors. 20 C.F.R. § 404.1566(c).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). At steps one through four, the claimant has the burden to prove he or she is disabled; at step five, the burden shifts to the Commissioner to prove there are jobs available in the national economy. *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009).

At step one, the ALJ will consider whether a claimant is engaged in "substantial gainful activity." *Id.* If so, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i). "Substantial activity is significant physical or mental work that is done on a full- or part-time basis. Gainful activity is simply work that is done for compensation." *Dukes v. Barnhart*, 436 F.3d 923, 927 (8th Cir. 2006) (citing *Comstock v. Chater*, 91 F.3d 1143, 1145 (8th Cir. 1996); 20 C.F.R. § 416.972(a),(b)).

If the claimant is not engaged in substantial gainful activity, at step two, the ALJ decides if the claimant's impairments are severe. 20 C.F.R. § 416.920(a)(4)(ii). If the impairments are not severe, then the claimant is not disabled. *Id.* An impairment is not severe if it does not significantly limit a claimant's "physical or mental ability to do basic work activities." *Id.* § 416.920(c). The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. These include

> (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.

*Bowen v. Yuckert*, 482 U.S. 137, 141 (1987) (quotation omitted) (numbers added; internal brackets omitted).

If the claimant has a severe impairment, at step three, the ALJ will determine the medical severity of the impairment. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment meets or equals one of the impairments listed in the regulations ("the listings"), then "the claimant is presumptively disabled without regard to age, education, and work experience." *Tate v. Apfel*, 167 F.3d 1191, 1196 (8th Cir. 1999).

If the claimant's impairment is severe, but it does not meet or equal an impairment in the listings, at step four, the ALJ will assess the claimant's residual functional capacity ("RFC") and the demands of the claimant's past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). RFC is what the claimant can still do despite his limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing 20 C.F.R. §§ 404.1545(a), 416.945(a)). RFC is based on all relevant evidence and the claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). "Past relevant work" is any work the claimant performed within the fifteen years prior to his application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 416.960(b)(1). If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 416.920(a)(4)(iv).

At step five, if the claimant's RFC will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. *Id.* Pts. 416.920(a)(4)(v), 416.960(c)(2). The ALJ must show not only that the claimant's RFC will allow the claimant to do other work, but also that other work exists in significant numbers in the national economy. *Eichelberger*, 390 F.3d at 591 (citation omitted).

## A.     *The ALJ'S Findings*

The ALJ made the following findings at each step with regard to Claimant's disability status:

At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since his alleged onset date. (AR at 12.)

At step two, the ALJ found that Claimant suffered from the following severe impairments: "degenerative disc disease of the lumbar spine status/post multilevel laminectomies and surgical fusion at L5-S1; degenerative joint disease of the right hip; degenerative joint disease of the right knee; degenerative joint disease of the shoulders; and degenerative disc disease of the cervical spine." (*Id.* at 13.)

At step three, the ALJ found that none of Claimant's impairments met or equaled a presumptively disabling impairment listed in the regulations. (*Id.*)

At step four, the ALJ found that Claimant had the RFC to perform a full range of work at all exertional levels with the following limitations:

> [He] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) in that he can lift, carry, push and/or pull 10 pounds occasionally and less than 10 pounds frequently; he can stand for 2 hours in a typical 8-hour workday; he can walk for up to 2 hours in a typical 8-hour workday; and he can sit 6 hours in a typical 8-hour workday. However, he must be able to sit or stand alternatively, at will, provided he is not off task more than 10% of the work period. He can occasionally reach overhead, bilaterally; and he is limited to no more than frequent handling and fingering, bilaterally. He can only occasionally stoop, kneel, crouch, crawl and/or climb ramps and stairs; he can never climb ladders, ropes or scaffolds; he can never work in excessive vibration or extreme cold; and he can never work around unshielded, moving machinery or exposed to unprotected heights. In addition, the claimant is limited to jobs that can be performed while using a hand-held assistive device for uneven terrain or prolonged ambulation; and he is able to understand, remember and carry out only simple and routine instructions and tasks consistent with SVP levels 1 and 2-type jobs as a result of medication side effects.

(*Id.* at 13-14.)

At step five, the ALJ found that despite Claimant's RFC, there were jobs that existed in significant numbers in the national economy Claimant could still perform, including semiconductor bonder, ampule sealer, and document preparer. (*Id.* at 17-18.)

Therefore, the ALJ concluded that Claimant was not disabled. (*Id.* at 19.) The disputes in this case arise in steps four and five.

## B.    *The Substantial Evidence Standard*

The ALJ's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Moore*, 572 F.3d at 522. "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted). The court cannot disturb an ALJ's decision unless it falls outside this available "zone of choice" within which the ALJ can decide the case. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) (citation omitted). The decision is not outside that zone of choice simply because the court might have reached a different decision. *Id.* (citing *Holley v. Massanari*, 253 F.3d 1088, 1091 (8th Cir. 2001)); *Moore*, 572 F.3d at 522 (holding that the court cannot reverse an ALJ's decision merely because substantial evidence would have supported an opposite decision).

In determining whether the Commissioner's decision meets this standard, the court considers all the evidence in the record, but does not reweigh the evidence. *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). A court considers both evidence that supports the ALJ's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [ALJ's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

## C.   *Duty to Develop the Record*

The administrative hearing is a non-adversarial proceeding, and the ALJ has a duty to "fully develop the record." *Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) (citing *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004)). Because the ALJ has no interest in denying Social Security benefits, the ALJ must act neutrally in

developing the record. *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004) (citing *Richardson v. Perales*, 402 U.S. 389, 410 (1971)); *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994) (opining that "[t]he goals of the [ALJ] and the advocates should be the same: that deserving claimants who apply for benefits receive justice") (quoting *Sears v. Bowen*, 840 F.2d 394, 402 (7th Cir.1988)) (bracketed information added) .

## III.    DISCUSSION

Claimant alleges the ALJ committed reversible error in (1) determining that Claimant can perform work that exists in significant numbers in the national economy; (2) determining that Claimant would not be off task more than ten percent of the time; and (3) failing to fully develop the record by rejecting all medical opinion evidence and failing to obtain a consultative examination. Finally, Claimant challenges the validity of the ALJ's decision because he contends the ALJ was not properly appointed under *Lucia v. SEC,* 138 S. Ct. 2044 (2018).

After conducting a thorough review of the administrative record, I find that the ALJ did not err at steps 1-3 of the five-step evaluation process. I will address each of Claimant's arguments, in turn.

**A.     *The record supports the ALJ's conclusion at step 5 that Claimant can perform other work in significant numbers in the economy if Claimant would be off task no more than ten percent of the time.***

I first note that the Commissioner concedes an error by the ALJ regarding the work available in the national economy that Claimant can perform. The Commissioner concedes that because of limitations on overhead reaching, only the semiconductor bonder's job represents work Claimant could perform. In other words, the Commissioner concedes a discrepancy between the vocational expert's testimony, the ALJ's hypothetical question, and the *Dictionary of Occupational Titles* entries for ampule sealer and document preparer. (Doc. 15 at 5 n.3.) Nevertheless, the Commissioner contends that the 55,000 semiconductor bonder positions that are available and that Claimant can perform represents a significant number of jobs. *Welsh v. Colvin,* 765 F.3d 926, 930

(8th Cir. 2014) held that 36,000 jobs constituted a significant number of jobs. Therefore, I recommend that the Court accept the ALJ's conclusion that a significant number of jobs exist in the national economy, even without the ampule sealer and document preparer positions.

Claimant argues, however, that the record is unclear whether any jobs exist that he could perform because there was some confusion about the hypothetical questions posed to the vocational expert and the responses to those questions. The ALJ included the following restriction in his first hypothetical, " . . . with a sit/stand option allowing the person to sit or stand alternatively at will provided the person is not off task by more than 10 percent of the work period. . . ." (AR at 45.)

In response to this hypothetical, the vocational expert stated Claimant could not perform his past work, but identified the three jobs referenced above. The ALJ modified the hypothetical as follows, "Same individual, same limitations except that the person would be off task by more than 10 percent of the work period in addition to regularly-scheduled breaks, lunches, or bathroom and water breaks. Would that preclude work at all exertional levels?" The vocational expert replied, "In my opinion, 10 percent is the limit and would preclude all work." (*Id.* at 46.)

Contrary to Claimant's conclusion, I find there was no confusion regarding the limitations in these hypotheticals. The first hypothetical posited a limitation of no more than 10 percent off task, which prompted the list of jobs discussed above. The second hypothetical asked if the same individual was off task for more than 10 percent of the time. The vocational expert's testimony is clear, especially in the context of the exchange with the ALJ: the vocational expert believed there was work available with a sit/stand option allowing the person to sit or stand alternatively at will provided the person is not off task for more than 10 percent of the work period. However, above 10 percent, there was no work available.

This exchange forms the background for the real gravamen of Claimant's appeal, discussed below, regarding whether Claimant would, in fact, be off task more than 10 percent of the time.

**B.   *Substantial evidence does not support the ALJ's conclusion at step 4 regarding the time Claimant would be off task.***

Claimant objects to the ALJ's conclusion regarding his residual functional capacity ("RFC") and the manner in which the ALJ reached his conclusion.  Specifically, the ALJ's decision states, ". . . [Claimant] must be able to sit or stand alternatively, at will, provided he is not off task more than 10% of the work period."  (AR at 13.)

Claimant contends that the "overwhelming evidence" shows he would be off task more than 10 percent of the time; that the ALJ failed to properly credit the opinions of his treating surgeon Dr. Segal; consulting physician, Dr. Delbridge, who conducted an independent medical examination ("IME") of Claimant;[2] and Claimant's own subjective complaints related to the 10 percent limitation. Claimant stated on his "Personal Pain/Fatigue Questionnaire" filed in conjunction with his application for DIB, "I can only work at a task for 15-20 minutes or less interval before needing to either sit or lie down to relieve pain." (*Id*. at 183.)  Claimant cites this part of the administrative record in support of his position that he would be off task more than 10 percent of the time.

The ALJ concluded that Claimant's "medically determinable impairments could reasonably be expected to cause a number of [his] symptoms" and he found a nexus between these impairments and Claimant's functional limitations. (*Id*. at 15.) The ALJ correctly states,

> the undersigned must carefully consider the claimant's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the consistency of his statements with the evidence as a whole, since a disability decision that is fully favorable to him

---

[2] Dr. Delbridge was hired by Claimant's attorney to perform an independent medical examination of Claimant.

cannot be made solely on the basis of objective medical evidence (SSR 16-3p).

(*Id.*)

However, in the assessment of severity of the impairment—especially as it relates to Claimant's ability to stay on task—I find grounds for disagreement with the ALJ's conclusions. The ALJ points to inconsistencies between the "evidence as a whole" and the conclusions of Claimant and the medical opinions. However, the ALJ's analysis does not point to substantial evidence in the record that explains what he means by the conclusory references to the "evidence as a whole."

More specifically, the ALJ does not explain what evidence, if any, supports his conclusion that Claimant can meet the restriction contained in the RFC that Claimant "must be able to sit or stand alternatively, at will, provided he is not off task more than 10% of the work period." (*Id.* at 13.) The ALJ clearly concluded that ten percent would be the maximum time Claimant could be off task and remain employable. *See supra* Section III.*A*. Implicit in the ALJ's decision is his conclusion that Claimant would, in fact, not be off task more than ten percent of the time. As Claimant puts it in his brief, there was "no effort from the ALJ to build an accurate and logical bridge" to finding time off task would be no more than ten percent. (Doc. 11 at 6) (citing *Lanigan v. Berryhill,* 865 F.3d 558, 563 (7th Cir. 2017)).

The absence of the explanation for this determination is more troubling given that the ALJ gave little weight to the opinions of David Segal, MD who was Claimant's treating surgeon and Dr. Delbridge, the examining physician. Dr. Segal completed a Medical Source Statement about a month before the administrative hearing and determined Claimant would be off task 25% or more of the time. (AR at 854.) Dr. Delbridge completed a Medical Source Statement about six weeks before the administrative hearing and determined that Claimant would be off task 15% of the time. (*Id.* at 688.)

An ALJ's RFC must ordinarily be supported by a treating or examining source opinion to be supported by substantial evidence. *See Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007); *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000). The ALJ must always give good reasons for the weight given the treating source's opinion. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citing 20 C.F.R. § 404.1527(c)(2)).

The ALJ gave Dr. Segal's treating physician opinions "limited weight" because he deemed them unsupported and contradicted by the evidence as a whole without explaining the basis for the conclusion. (AR at 16.) It is far from clear what about the "evidence as a whole" the ALJ believes is contrary to Dr. Segal's opinions.

"A treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record as a whole.[3] *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (quotation omitted). "Even if the treating physician's opinion is not entitled to controlling weight, it should not ordinarily be disregarded and is entitled to substantial weight." *Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015) (citation and brackets omitted). However, a treating physician's opinion can be given limited weight if it contains only conclusory statements, contains inconsistent opinions "that undermine the credibility of such opinions," is inconsistent with the record, or if other medical opinions are supported by "better or more thorough medical evidence." *Id.* (citations omitted). An ALJ must "give good reasons" for the weight given to a treating physician's opinion. 20 C.F.R. § 404.1527(c)(2); *Walker v. Comm'r, Soc. Sec. Admin.*, 911 F.3d 550, 554 (8th Cir. 2018) (remanding case to the ALJ for further proceedings because the ALJ "simply ignore[d]" treating physician's opinion).

---

[3] Under current regulations, a treating physician's opinion is entitled to no special deference. *See* 20 C.F.R. § 404.1520c(c). These regulations were effective as of March 27, 2017. *See* 20 C.F.R. § 404.1527. However, Claimant's claim was filed on November 19, 2014, so the old regulations apply. *See id.*

Here, the ALJ cited no contradictory evidence that undermined Dr. Segal's opinion that Claimant would be off task 25% or more of the time and, as previously discussed, did not explain what in the "evidence as a whole" he relied upon. Moreover, the ALJ did not say Dr. Segal's opinions contained cursory statements or were internally inconsistent. Therefore, the ALJ failed to give "good reasons" for the weight he assigned to Dr. Segal's opinion. The disregard of this treating physician's opinions is in error, especially given that the ALJ rejected the opinions of Arnold Delbridge MD, who conducted an IME and who determined Claimant would be off task 15 percent of the time. (AR at 688.)

The ALJ discounted Dr. Delbridge's opinions because they were "contradicted by the evidence as a whole, including his own reported findings: he noted, for example, that the claimant demonstrated good grip and range of motion of his arms, shoulders and hands, yet opined he could use his arms to reach forward only 15% of the day." (*Id.* at 15.) Again, the ALJ failed to cite any particular evidence in the administrative record that contradicted Dr. Delbridge's opinion, relying instead on an amorphous citation to the evidence "as a whole." The Claimant's ability to grip has no relation on this record to Claimant's ability to reach forward. To the extent that the ALJ found Dr. Delbridge's opinions regarding Claimant's range of motion and reaching at odds, Claimant testified that his reaching is not limited by range of motion, but by pain, something he is currently addressing with his physicians. (*Id.* at 37, 40, 43-44.) Finally, and most importantly for this issue, the ALJ said nothing about Dr. Delbridge's opinion that Claimant would be off task 15% of the time.

Having accorded limited or little weight to these Medical Source Statements, the ALJ similarly discounted other opinions regarding Claimant's limitations in favor of the unexplained "evidence as a whole." The ALJ discounted the opinions of John May, M.D. and Laura Griffin, D.O., physicians and state agency medical consultants, as well as the opinions of physical therapist Michelle Breitbach. (*Id.* at 15-16.) The ALJ was unpersuaded by Claimant's subjective complaints, finding them unsupported by "the

evidence as a whole." Among other reasons, the ALJ noted the Claimant was using "only Ibuprofen" for his pain and had experienced some improvement from treatment. (*Id.* at 15.)

"There is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citations omitted). However, "[w]here an ALJ does not rely on opinions from treating or examining sources, there must be some other medical evidence in the record for the ALJ's opinion to be supported by substantial medical evidence on the record." *Shuttleworth v. Berryhill*, No. 17-CV-34-LRR, 2017 WL 5483174, at *7 (N.D. Iowa Nov. 15, 2017) (citing *Harvey v. Barnhart*, 368 F.3d 1013, 1016 (8th Cir. 2004)).

While any of the medical sources commenting on Claimant's condition might be discounted after proper analysis, the ALJ's opinion must, nevertheless be supported by substantial evidence. *Shuttleworth*, 2017 WL 5483174, at **3-4. The Commissioner argues that the "substantial evidence showed Claimant could meet the modest demands of sedentary work" with additional restrictions. (Doc. 15 at 9.) However, the Commissioner does not point to specific evidence that supports this broad conclusion, let alone identify the evidence that supports the conclusion that Claimant would be off task no more than 10 percent of the time.

In conclusion, I find that the ALJ failed to explain how his conclusion that Claimant would be off task no more than 10% of the work period is supported by the evidence. I recommend that the Court remand the case for the ALJ to properly explain this conclusion, including his rejection of the opinions of the medical professionals.

**C.** **The claim should be remanded to evaluate the opinions of Dr. Segal and Dr. Delbridge and, if necessary, to develop the record with additional evidence regarding Claimant's residual functional capacity.**

Dr. Segal was Claimant's treating surgeon. He treated Claimant from September 2015 to February 2016 (AR at 425-38), and wrote a Medical Source Statement in January 2017. (*Id.* at 850-55). Dr. Delbridge was a consulting physician hired by Claimant's

attorney to examine Claimant and provide a Medical Source Statement, which he wrote on December 31, 2016. (*Id.* at 686-89.)

### 1. *Applicable Law*

"It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole." *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001) (noting internal citations omitted)). A proper evaluation of a physician's opinion requires consideration of the following factors: (1) examining relationship, (2) treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors.[4] 20 C.F.R. §§ 404.1527(c)(1)-(5), 416.927(c).

### a. *Dr. Segal's Opinion*

An ALJ must "give good reasons" for the weight assigned to a treating physician's opinion. 20 C.F.R. § 404.1527(c)(2). The ALJ in this case failed to do so. The ALJ gave Dr. Segal's opinion "limited weight" because he found that Dr. Segal's opinion was "inconsistent with the evidence as a whole" and "unsupported and contradicted by the evidence as a whole." (AR at 16.)

Dr. Segal opined that Claimant had lumbar radiculopathy,[5] degenerative disc disease, spinal stenosis, lumbar facet arthropathy, cervical radiculopathy, cervical stenosis, and cervical degeneration. (*Id.* at 852.) Dr. Segal also opined that Claimant's neck and back pain radiates to his legs and causes Claimant difficulty with all activity,

---

[4] "Other factors" can include information claimants or others bring to the Social Security Administration's ("SSA") attention, or of which it is aware, which tend to support or contradict a medical opinion. "For example, the amount of understanding of [SSA] disability programs and their evidentiary requirements that a medical source has, regardless of the source of that understanding, and the extent to which a medical source is familiar with the other information in [a claimant's] case record are relevant factors that [SSA] will consider in deciding the weight to give to a medical opinion." 20 C.F.R. § 404.1527(c)(6).

[5] Radiculopathy is a "disorder of the spinal nerve roots." *Stedman's Medical Dictionary* 1622 (28th ed. 2006).

including "standing, walking, [and] sitting." (*Id.*) Dr. Segal also stated that Claimant had "motor weakness legs, sensory disturbance legs." (*Id.*)

Dr. Segal further opined that Claimant could only sit for one hour at a time; stand for 45 minutes at a time; sit for a total of two hours in an eight-hour work day; walk with a cane for a total of two hours in an eight-hour work day; would need to shift positions at will from sitting, standing, or walking; and would have to take ten-minute breaks five to six times a day in an eight-hour work day. (*Id.* at 853.) Dr. Segal also restricted Claimant to occasionally lifting ten pounds or less and to never lifting 20 or more pounds. (*Id.* at 853-54.) He also restricted Claimant to twisting, looking up, and climbing stairs rarely; stooping or bending (but not while lifting), looking down with sustained flexation of his neck, and holding his head in a static position occasionally; and to never crouching, squatting, or climbing ladders. (*Id.*)

Dr. Segal stated that Claimant would be off task 25% or more of the time, would likely miss more than four days of work a month, and that all his days at work would likely be "bad" days. (*Id.* at 854.)

### i. Analysis

#### A. Examining Relationship

"Generally, [ALJs] give more weight to the medical opinion of a source who has examined [a claimant] than to the medical opinion of a medical source who has not examined [a claimant]." 20 C.F.R. § 404.1527(c)(1). Dr. Segal was Claimant's treating surgeon and examined him on September 22, 2015. They discussed treatment options for Claimant's back pain, such as injections, prior to Dr. Segal performing spinal surgery on Claimant on January 11, 2016. Dr. Segal also oversaw Claimant's post-operative visit on February 4, 2016. Because Dr. Segal was a treating source, his opinion should generally be entitled to more weight than the opinions of sources who did not examine Claimant.

## B.  Treatment Relationship

"Generally, [ALJ's] give more weight to the medical opinions from [a claimant's] treating sources. . . . When the treating source has seen [the claimant] a number of times and long enough to have obtained a longitudinal picture of [the claimant's] impairment, [the ALJ] will give the source's opinion more weight than . . . if it were from a nontreating source." 20 C.F.R. § 404.1527(c)(2)(i).  In addition, "the more knowledge a treating source has about [a claimant's] impairment(s), the more weight the [ALJ] will give the source's opinion." *Id.* at § 404.1527(c)(2)(ii).  Although Claimant saw Dr. Segal only two times, his visits spanned five critical pre-operative to post-operative months.  This was long enough to obtain a longitudinal view of Claimant's impairment. Dr. Segal's conclusions are based on clinical findings and examinations, and not only Claimant's subjective reports. *See Whitman v. Colvin,* 762 F.3d. 701, 706 (8th Cir. 2014) (discounting claimant's "treating source" opinion because claimant, himself, called physician a "consultative examiner" and physician saw claimant only once and based his opinion largely on claimant's subjective complaints).  Thus, Dr. Segal's opinion should be entitled to more weight than the opinion of doctors who did not have a treating relationship with Claimant.

## C.  Supportability

"The better an explanation a source provides for a medical opinion, the more weight [the ALJ] will give that medical opinion." 20 C.F.R. § 404.1527(c)(3).  The Commissioner argues Dr. Segal's opinion lacks support because Dr. Segal never confirmed "weakness or sensory disturbances in [Claimant's] legs" in his treatment notes. (Doc. 15 at 11.)  I find this argument without merit.  Dr. Segal's September 22, 2015 notes state that Claimant was experiencing "numbness" and "tingling" in his right leg and knee.  (AR at 426.)  A post-surgery note from a visit with Dr. Segal's PA that Dr. Segal reviewed and updated states that the PA and Claimant discussed the "weakness and numbness" Claimant was experiencing after his surgery.  (*Id.* at 438.)  Thus, a proper analysis of Dr. Segal's opinion would likely have revealed some support for his opinion.

### D. Consistency

"Generally, the more consistent a medical opinion is with the record as a whole, the more weight [the ALJ] will give to that medical opinion." 20 C.F.R. § 404.1527(c)(4). The Commissioner argues that the ALJ gave Dr. Segal's opinion the weight it deserved because Dr. Segal's opinion is not supported by "the evidence as a whole." (Doc. 15 at 10.)

The Commissioner asserts three arguments related to consistency. First, the Commissioner asserts that Dr. Segal's statement that Claimant has stenosis is contradicted by an August 2016 MRI "showing no spinal stenosis." (Doc. 15 at 11.) I find that the Commissioner overstates the conclusions of this MRI. Dr. Segal apparently did not have access to certain medical records when he wrote his medical opinion. However, the MRI cited by the Commissioner is a lumbar spine MRI that imaged only Claimant's lower back. (AR at 683.) Dr. Segal noted that Claimant suffered from stenosis in both his lumbar and cervical spine, so that even if this isolated record tended to show Claimant's lumbar spine was symptom-free, it does nothing to undermine Dr. Segal's conclusions regarding Claimant's cervical spine limitations. Moreover, the MRI does, in fact, note a "broad-based disc bulge." (*Id.*)

Second, the Commissioner avers that the ALJ's decision is supported by a number of facts. On March 31, 2015, Claimant told a nurse that he walks 30 minutes a day. On February 4, 2016, he told Dr. Segal's PA that he was 80% better and that his pain had decreased to a level 3. On the same date, the PA told Claimant that the numbness and weakness he was experiencing at the time would improve. (Doc. 15 at 11) (citing AR at 389, 430-32, 437-38.) I find that Claimant's walking does not undermine Dr. Segal's opinion. Dr. Segal determined that Claimant must walk 10 minutes five to six times a day with a cane. This is not at odds with walking 30-minutes-a-day because the note that says Claimant walks 30-minutes-a-day does not say whether Claimant used a cane or not. Moreover, the record seems to show that Claimant began using a cane after his surgery on January 11, 2016. The fact that Claimant improved after his surgery and was told at

his two-week post-operative checkup to expect improvement does not undermine the symptoms he was experiencing on later dates.[6]

Third, the Commissioner argues that the ALJ's decision is supported by certain facts. On May 3, 2016, Claimant's physical therapist set a ten pound lifting limit and Claimant reported to the therapist that he was feeling "more sturdy on [his] feet, was using a cane less for balance." On May 12, 2016, he reported feeling stronger, walking without the cane and being more sure-footed, and being able to walk "a few blocks." In June 2016, his physical therapist reported that Claimant had "good tolerance" for higher level exercises, could stand on one leg for 10 seconds, and was adding lunges and "knee to chest" stretch exercises to his routine; and Claimant reported he used his brace less frequently and felt "stronger." (Doc. 15 at 11-12) (citing AR at 542, 551, 560, 563.) The Commissioner also cites Claimant's use of only high dosages of Ibuprofen for pain. (*Id.*) (citing AR at 666) (physician prescribed 800 mg Ibuprofen tablets).

Again, I find these arguments unavailing. The events cited by the Commissioner are from reports of Claimant's post-surgery physical therapy sessions. Claimant may have recovered from the surgery itself, though his on-going condition may not have improved. This reflects progress in his post-operative condition without revealing much about his residual disability. There is no explanation of what "higher level exercise" meant in the context of Claimant's therapy program or what connection Claimant's post-operative therapy exercises had with Claimant's work restrictions at the time of the hearing. (AR at 560.) *See Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) (holding that "doing well" for purposes of a treatment program did not necessarily have any relation to a claimant's ability to work) (citations omitted). In addition, although Claimant tries to use only Ibuprofen for pain, the dosage he takes is 800 mg, a prescription-strength dosage, and he takes Tramadol, a prescription pain killer, four or

---

[6] It is unknown if Dr. Segal reviewed physician office notes and chiropractic notes dated after Claimant's January 11, 2016 surgery when preparing his written opinion in this case. (*See* AR at 407-10, 828-46.)

five times a week. (*Id.* at 31.) Claimant was also prescribed Vicodin as recently as April 2016. (*Id.* at 408-09.) The Commissioner seems to take issue with Dr. Segal requiring Claimant to use a cane at all times. I see nothing in the record that suggests Claimant's use of a cane is unnecessary. (*Id.* at 7, 33, 407, 449, 679.)

The only evidence cited by the Commissioner that arguably supports the ALJ's conclusions is a physical therapy note that limits Claimant to lifting ten pounds. (AR 542.) However, this limitation supports Dr. Segal's conclusion that Claimant can lift ten pounds occasionally. The physical therapist did not say how often Claimant could lift ten pounds. These two records are not at odds. In addition, the Commissioner admits that on October 19, 2016, Physician Assistant Matthew Sowle documented decreased range of motion, tenderness, and back pain, and that he diagnosed chronic low back and neck pain without sciatica. (Doc. 15 at 12) (citing AR at 669-70.) The Commissioner cites PA Sowle's notes from the same appointment that state Claimant has normal reflexes, muscle tone, and coordination. However, the Commissioner does not explain how these notes undermine Dr. Segal's opinion, except to argue that Dr. Segal's opinion is "out of sync with [Claimant's] treatment and therapy notes." (*Id.*) Accordingly, a proper analysis may conclude that Dr. Segal's opinion is consistent with the record as a whole.

### E.     Specialization

"[The ALJ will] generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(c)(5). Dr. Segal is a board-certified neurosurgeon who rendered an opinion about Claimant's limitations after neurosurgery. Therefore, the ALJ was required to credit Dr. Segal's opinion, if it was supported by the record. *See Brown v. Astrue*, 611 F.3d 941, 954 (8th Cir. 2010) (affirming ALJ's decision to give greater weight to opinion of claimant's treating psychiatrist than to opinion of her family physician when claim was based on mental health issues).

### ii. Conclusion

I find that the ALJ failed to conduct a proper analysis of Dr. Segal's opinion. Therefore, I recommend that the Court remand the case for the ALJ to conduct the necessary analysis of Dr. Segal's opinion under 20 C.F.R. Section 404.1527(c).

### b. Dr. Delbridge's Opinion

The ALJ gave Dr. Delbridge's opinion little weight because he determined it was "contradicted by the evidence as a whole, including his own findings." (AR 15.) The ALJ asserts that Dr. Delbridge had only one contact with Claimant—a consulting examination on April 7, 2016. The ALJ points out that Dr. Delbridge admitted Claimant was not at maximum medical improvement when he examined Claimant. Finally, the ALJ notes that Dr. Delbridge did not have access to evidence added to the record after his review on December 31, 2016.[7] (Doc. 15 at 14.)

In December 2016, Dr. Delbridge opined that Claimant could walk one or two blocks with a cane without rest or severe pain, sit one hour at a time without a break, stand 45 minutes without a break, and only sit or stand/walk with a cane a total of four hours in an eight-hour day. (AR at 687.) He also opined that Claimant needed a job that permitted him to shift positions at will from sitting, standing, or walking, and needed to take five to six ten-minute breaks a day to walk with a cane. (*Id.*) Dr. Delridge further opined that Claimant could occasionally lift ten pounds or less only and could never lift over that much weight. (*Id.*) He stated that Claimant could occasionally stoop without picking something up below knee level, look down, turn his head, and hold his head in a static position; could rarely twist, climb stairs, and look up; and could never crouch/squat

---

[7] Dr. Delbridge examined Claimant in April 2016 and issued an initial opinion in August 2016 in conjunction with Claimant's claim for worker's compensation benefits. (AR at 446-54.) At that time, he admitted that Claimant was not at maximum medical improvement. (*Id.* at 453.) He then issued an opinion on December 31, 2016 in conjunction with Claimant's application for Social Security benefits. (*Id.* at 686-89.) Between August and December, 2016, additional records were added to the administrative file for the case, but it is unknown if Dr. Delbridge reviewed those records in conjunction with his updated opinion. (*Id.*)

or climb ladders. (*Id.* at 688.) He also stated that Claimant could use his hands to grasp, turn, and twist objects 90% of a work day; use his fingers for fine manipulations 90% of a work day; reach his arms in front of his body for 15% of the work day; but could never reach overhead. (*Id.*) Dr. Delbridge further opined that Claimant would likely be off task 15% of a typical work day, would miss about four days of work a month, and would likely have mostly "bad days" on the days that he was at work. (*Id.*)

### i. Analysis

#### A. Examining Relationship

As stated above, "generally, [ALJs] give more weight to the medical opinion of a source who has examined [a claimant] than to the medical opinion of a medical source who has not examined [a claimant]." 20 C.F.R. § 404.1527(c)(1). Dr. Delbridge was one of two medical sources addressed by the ALJ in his opinion who actually examined Claimant. (AR at 15-16.)[8] Usually, "the report of a consulting physician who examined the claimant once does not constitute 'substantial evidence,' especially when contradicted by the evaluation of the claimant's treating physician." *Cantrell v. Apfel,* 231 F.3d 1104, 1107 (8th Cir.2000). Here, however, although Dr. Delbridge was a consultant, his opinion does not contradict the evaluation of Claimant's treating physician. The two

---

[8] Claimant did not have a long-term treatment relationship with any single physician. The record contains records from other medical sources that the ALJ failed to acknowledge. Dr. Ashar Afzal gave Claimant steroid injections in his lower back periodically between February 10 and April 4, 2005. (AR at 246-54.) Dr. Chad D. Abernathy saw Claimant six times between May 31, 2005 and September 22, 2006, including performing surgery on Claimant's back. (*Id.* at 257-61, 617-20.) Claimant saw the following doctors once: Dr. Eman Al Selmi in 2014 for shoulder and knee pain; Dr. Paul Weber in 2015 for back and knee pain; Dr. Cassim Ingram in April 2016 for an independent medical examination related to his back and leg problems; and Dr. Matthew Howard in August 2016 for back pain. (*Id.* at 318-27, 407-12, 419-20, 679-81.) Claimant saw Dr. Annie Kontos, a primary care physician, three times from 2005 to 2006; records from her office also document a visit with a different physician in 2011 and a visit for vaccines in 2012. (*Id.* at 623-42.) Claimant saw Matthew Sowle, PA, for back pain, neck pain and stiffness, and gait problems in June and October 2016. (*Id.* at 666-70.) Claimant did, however, treat with chiropractors over extended periods at different times. (*Id.* at 270-312, 457-565, 568-72, 691-848.)

opinions are in concert. Therefore, Dr. Delbridge's opinion should not have been rejected without a proper analysis.

### B. Treatment Relationship

"Generally, [ALJ's] give more weight to the medical opinions from [a claimant's] treating sources. . . . When the treating source has seen [the claimant] a number of times and long enough to have obtained a longitudinal picture of [the claimant's] impairment, [the ALJ] will give the source's opinion more weight than . . . if it were from a nontreating source." 20 C.F.R. § 404.1527(c)(2)(i). In addition, "the more knowledge a treating source has about [a claimant's] impairment(s), the more weight the [ALJ] will give the source's opinion." *Id.* at § 404.1527(c)(2)(ii). Dr. Delbridge did not see Claimant a number of times, but, as discussed in note 8, Claimant had no established relationship with any doctor.[9] Although the number of contacts with a physician is a relevant factor the ALJ can consider in rendering a decision, that number, alone, is not sufficient to justify the limited weight the ALJ assigned Dr. Delbridge's opinion. On remand, the ALJ will need to decide how much weight to assign to this factor as it relates to Dr. Delbridge.

### C. Supportability

20 C.F.R. Section 404.1527(c)(3) provides that "[t]he better an explanation a source provides for a medical opinion, the more weight [the ALJ] will give that medical opinion." The Commissioner first seems to argue that Dr. Delbridge's opinion lacks support because Dr. Delbridge did not re-examine Claimant between August and December 2016. Instead, it appears that Dr. Delbridge relied on his findings from his April 2016 medical examination and the other documents he reviewed in August 2016

---

[9] Claimant frequently chose chiropractic care. The court may consider chiropractic notes as they relate to limitations, but chiropractors are not considered medical sources who are able to provide opinions regarding disability in Social Security cases. *See Cronkhite v. Sullivan*, 935 F.2d 133, 134 (8th Cir. 1991) (citing 20 C.F.R. § 404.1513); SSR 06-03p, 2006 WL 2263437 (Aug. 9, 2006) (listing physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists as "medical sources").

when rendering his December 2016 opinion. (AR at 446-47, 686.) To the extent Dr. Delbridge wished to incorporate prior findings or other documents in his December 2016 opinion and failed to do so, I cannot say. I also cannot speculate regarding whether Dr. Delridge was able to review Claimant's updated medical records for the period between August and December 2016 when crafting his opinion. On remand, the ALJ will need to resolve these questions and decide how much weight to give this factor.

The Commissioner also argues that internal inconsistencies in Dr. Delbridge's assessment support the ALJ's determination that the opinion is due little weight. (Doc. 15 at 13.) The Commissioner notes that in August 2016, Dr. Delbridge stated that Claimant was "negative for pain with straight leg raising and that his pain was located at his surgical site;" "had a good range of motion in his arms, shoulders, and hands, and good grip strength;" "had only a limited ability to stand and sit, apparently due to lumbar spine pain;" and, "[a]side from a loss of range of motion in his lumbar spine and related neurologic losses, [had] little to no leg impairment." (*Id.* at 13-14 (citing AR at 450-51).) In contrast, the Commissioner argues that in December 2016, Dr. Delbridge opined that Claimant had much greater restrictions and would need frequent unscheduled breaks, would have four or more absences a month, and could only reach out in front of his body 15% of the time. (*Id.* at 14) (citing AR at 687-88.) In addition, the Commissioner asserts that Dr. Delbridge's opinion should be rejected because Dr. Delbridge admitted that Claimant was not at maximum medical improvement when he examined Claimant in April 2016. (*Id.*) (citing AR at 451.)

First, Dr. Delbridge's December 2016 opinion regarding frequent breaks does not undermine anything in his August 2016 opinion, which did not address breaks. More importantly, on August 15, 2016, Dr. Delbridge wrote a letter responding to a query from Claimant's attorney "requesting a ballpark figure regarding [Claimant's] permanent restrictions." (AR at 453.) In that letter, Dr. Delbridge opined that Claimant would "not be able to stand on a prolonged basis beyond 30-45 minutes without at least a 5-10 minute break of sitting," that he doubted Claimant "can sit continuously for more than

an hour," and that Claimant "can do sitting type work as long as he is able to move around and stand periodically." (*Id.*) Dr. Delbridge's August 2016 statement that Claimant had limited sitting and standing abilities is consistent with his December 2016 opinion setting restrictions on the amount of time Claimant can engage in prolonged sitting and standing.

Second, Dr. Delbridge's August 2016 opinions regarding Claimant's hand and grip strength are consistent with the 90% use opinion he gave in December 2016. Regarding the range of motion in Claimant's shoulder, Claimant testified that his reaching is not limited by range of motion, but by pain, and that he and his physicians have discussed treatment options, including surgery. (*Id.* at 37, 40, 43-44.)

Third, Claimant's lack of leg pain while doing certain exercises is not inconsistent with a need to shift positions after sitting or standing in one position after a period of time. The Commissioner has not explained to the Court how these two statements are at odds with each other. Therefore, this argument is without merit.

Fourth, Dr. Delbridge's August 2016 statement that Claimant has a loss of range of motion in his lumbar spine is consistent with the twisting limitations he placed on Claimant in December 2016.

Fifth, it is unclear what Dr. Delbridge meant in August 2016 when he said there was "little to no leg impairment" or why the Commissioner mentioned it in his argument. Claimant's leg, itself, does not seem to be impaired. At least no doctor has diagnosed Claimant's leg as the source of his pain or his disability. It seems that Claimant's leg pain is related to his back issues. Claimant started using a cane for balance after the surgery Dr. Segal performed, and Dr. Delbridge included use of a cane in his December 2016 opinion (*Id.* at 687), but the Commissioner does not take issue with that restriction. Thus, to the extent the ALJ finds this statement in the record inconsistent with Dr. Delbridge's final opinion, he will need to weigh it in his analysis on remand.

Finally, the Commissioner seems to assert that Dr. Delbridge's opinion is entitled to little weight because he admitted that Claimant was not at maximum medical

improvement when he examined him. Claimant responds that the Commissioner fails to point to any improvements in Claimant's condition that have occurred since Dr. Delbridge rendered his opinion and Claimant notes that the only new evidence added to the record after Dr. Delbridge's December opinion were more physical therapy records. I find Claimant's arguments persuasive. Indeed, the Commissioner does not argue that Claimant has improved since Dr. Delbridge issued his opinion, and he does not cite any evidence that likely would have changed Dr. Delbridge's opinion.

### D.    Consistency

20 C.F.R. Section 404.1527(c)(4) provides that "[g]enerally, the more consistent a medical opinion is with the record as a whole, the more weight [the ALJ] will give to that medical opinion." The only support the Commissioner cites for the ALJ's conclusion that Dr. Delbridge's opinion is not consistent with the record as a whole is that Claimant does his physical therapy exercises and can sweep, cook, and garden, with some restrictions. (Doc. 15 at 15) (citing AR at 15, 34-35, 184-85.) I do not find that the record cited supports the Commissioner's conclusion. In October 2014, Claimant said he could sweep "in short intervals" (AR at 185), but did not mention sweeping when asked about household chores and his daily routine at the hearing. Likewise, in October 2014, Claimant said he could no longer till his garden and had to pay someone to do it for him, and that he liked to "spend time" in his garden "in short intervals." (*Id.* at 184-85.) In October 2014, Claimant also said he could cook as long as he did not use heavy pans. (*Id.* at 185.) However, at the hearing, Claimant did not mention gardening at all and testified that he only makes sandwiches or microwaves food and that his girlfriend makes dinner. (*Id.* at 34-35.)

As with Dr. Segal's opinion, I find that Dr. Delbridge's opinion is not contradicted by the administrative record as a whole. Although Claimant made progress in physical therapy, he had to stop because his insurance "cancelled it out," not because he was discharged for successful completion of his rehabilitation program. (*Id.* at 30.) As discussed above, the ability to perform physical therapy exercises does not necessarily

correlate to an ability to work. *Hutsell,* 259 F.3d at 712. Moreover, Claimant continues to see a chiropractor, but the relief he gets from those appointments is short-lived. (*Id.* at 31.) He also takes substantial amounts of pain medication: 800 mg Ibuprofen tablets, a prescription-strength dose, daily; muscle relaxers; and Tramadol four to five times a week. (*Id.*)

### E.     Specialization

"[The ALJ will] generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(c)(5). Dr. Delbridge signed his opinions "Arnold E. Delbridge, M.D." His CV is not part of the administrative record. Therefore, I cannot conclude that Dr. Delbridge is a specialist giving an opinion in his area of medical specialization. On remand, the ALJ will need to decide how to weigh this evidence when conducting his review of Dr. Delbridge's opinion.

### *ii.     Conclusion*

I find that the ALJ failed to conduct a proper analysis of Dr. Delbridge's opinion. Therefore, I recommend that the Court remand the case for the ALJ to conduct the necessary analysis of Dr. Delbridge's opinion under 20 C.F.R. Section 404.1527(c).

### *c.     Consulting Medical Opinion*

Claimant alleges that the RFC is not supported by substantial medical evidence because the ALJ did not rely on treating or examining source opinions and also rejected the opinions of the Agency's reviewing physicians. Specifically, Claimant notes that the ALJ gave the opinions of the reviewing physicians little weight because they were dated December 30, 2014 and February 4, 2015. The ALJ noted this was before "substantial evidence was added to the record," including evidence related to Dr. Segal's surgery on Claimant. (AR at 15, 57, 68.) The ALJ gave the opinion of physical therapist Michelle Breitbach limited weight because he found the opinion "vague and nonspecific" and because physical therapists are not medical sources authorized to render medical opinions in Social Security cases. (*Id.* at 16.) As noted above, the ALJ gave Dr. Segal's opinion

limited weight and Dr. Delbridge's opinion little weight. (*Id.* at 15-16.) The ALJ gave no indication for how or if he weighed the medical evidence listed in note 8, *supra*.

Claimant also argues that the ALJ's RFC states that Claimant can sit six hours in an eight-hour work day when the only place this limitation appears is in the oldest opinions in the record, the opinions of the Agency's reviewing physicians, which the ALJ gave little weight because they were too old. (*Id.* at 15, 55, 66.) Moreover, the ALJ gave no reason for rejecting the sitting limitations imposed by Drs. Segal and Delbridge. In addition, the RFC states that Claimant only needs his cane on uneven ground or for "prolonged ambulation" (*Id.* at 14), but there is nothing in the record that states that limitation. Claimant testified that the cane helps with his balance and he had it with him at the hearing. (*Id.* at 33.) Both Drs. Segal and Delbridge opined that Claimant would need a cane fulltime. (*Id.* at 687, 853.) Therefore, according to Claimant, the RFC is not supported by substantial evidence in the record as a whole.

Claimant argues that if, after a proper evaluation of Dr. Segal's and Dr. Delbridge's opinions, the ALJ still rejects all the medical opinions in the record, the ALJ should order a consultative examination to explore Claimant's current functional limitations "given the ALJ chose to reject all of the medical opinions available." (Doc. 11 at 11.)

"Where an ALJ does not rely on opinions from treating or examining sources, there must be some other medical evidence in the record for the ALJ's opinion to be supported by substantial medical evidence on the record." *Shuttleworth*, 2017 WL 5483174, at *7 (citation omitted). Although "there is no requirement that an RFC finding be supported by a specific medical opinion," *Hensley*, 829 F.3d at 932, RFC is a medical question, and an ALJ's finding must be supported by *some* medical evidence. *Guilliams*, 393 F.3d at 803 (emphasis added). Specifically, some medical evidence "must support the determination of the claimant's residual functional capacity, and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace." *Hutsell*, 259 F.3d at 712 (brackets omitted). Accordingly, if, after proper

evaluations of Dr. Segal's and Dr. Delbridge's opinions, the ALJ determines that the medical evidence in the administrative record does not address Claimant's current limitations, I recommend that the Court order the ALJ to order a consultative examination of Claimant so that there is current medical evidence in the record.

**D.** **Claimant failed to timely raise his Appointments Clause argument under *Lucia v. SEC.***

In *Lucia v. SEC*, the Supreme Court held that ALJs of the Securities and Exchange Commission are "Officers of the United States" within the meaning of the Appointments Clause, and, therefore, the President, a court of law, or department head must appoint them. 138 S. Ct. at 2049. Claimant argues that Social Security Administration ALJs should be treated as improperly appointed "inferior officers" like the SEC ALJs in *Lucia*. Claimant asserts that the proper remedy is for this Court to vacate the denial of benefits by ALJ Souza who decided this case and remand the case for decision by a properly appointed ALJ. Claimant admits that he is asserting his Appointments Clause challenge for the first time in his opening brief to this Court, but argues that because *Lucia* was not decided until after his administrative hearing, that timing should not act as a bar. (Doc. 11 at 17 n.5.)

This Court has ruled in favor of the Commissioner on similar claims on four occasions. *Stearns v. Berryhill*, No. 17-CV-2031-LTS, 2018 WL 4380984, at *6 (N.D. Iowa Sept.14, 2018), *Davis v. Comm'r of Soc. Sec.*, No. 17-CV-80-LRR, 2018 WL 4300505, at *8-9 (N.D. Iowa Sept. 10, 2018); *Iwan v. Comm'r of Soc. Sec.*, No. 17-CV-97-LRR, 2018 WL 4295202, at *9 (N.D. Iowa Sept. 10, 2018); *Thurman v. Comm'r of Soc. Sec.*, No. 17-CV-35-LRR, 2018 WL 4300504, at *9 (N.D. Iowa Sept. 10, 2018).

Most recently, this Court ruled as follows:

The United States District Court for the Central District of California has considered *Lucia* in the Social Security context, holding that claimants have forfeited the Appointments Clause issue by failing to raise it during administrative proceedings. *See Trejo v. Berryhill*, Case. No. EDCV 17-0879-JPR, 2018 WL 3602380, at *3 n.3 (C.D. Cal. July 25, 2018). I find

this holding to be consistent with [relevant precedent]. Stearns' argument that an issue need not be raised if the ALJ does not have authority to decide it does not hold water under *Lucia*. *Lucia* made it clear that, with regard to Appointments Clause challenges, only "one who makes a timely challenge" is entitled to relief. *Lucia*, 138 S. Ct. at 2055 (quoting *Ryder*, 515 U.S. at 182-83).

In *Lucia*, the Supreme Court acknowledged the challenge was timely because it was made before the Commission. *Id.* In the context of Social Security disability proceedings, that means the claimant must raise the issue before the ALJ's decision becomes final. . . . *Lucia* makes it clear that this particular issue must be raised at the administrative level.

Because Stearns did not raise an Appointments Clause issue before or during the ALJ's hearing, or at any time before the ALJ's decision became final, I find that she has forfeited the issue for consideration on judicial review. As such, her request for remand on this basis is denied.

*Stearns*, 2018 WL 4380984, at **5–6 (paragraph break added).

Claimant argues that since *Lucia* was decided after his case was decided by the ALJ, he should not be subjected to the requirement that the ALJ appointment issue be raised at the administrative level. (Doc. 11 at 17 n.5.) I disagree. All the cases cited above had the same procedural posture (i.e., all administrative hearings were completed before *Lucia* was decided and before the claimants raised the appointment argument for the first time to this Court[10]). *See Stearns v. Berryhill*, No. 17-CV-2031-LTS, 2018 WL 3618368, at *1 (N.D. Iowa July 30, 2018), *R. & R. accepted*, 2018 WL 4380984, at *10; *Davis*, 2018 WL 4300505, at *1; *Iwan*, 2018 WL 4295202, at *1; *Thurman*, 2018 WL 4300504, at *1. I concur entirely with the reasoning of this Court set forth in these opinions. Therefore, I find that Claimant's request for remand on this basis should be denied.

## VI.   CONCLUSION

**For the foregoing reasons, I respectfully make the following recommendations:**

---

[10] *Lucia* was decided on June 21, 2018. 138 S. Ct. at 2044.

1. The District Court accept the ALJ's conclusion that a significant number of jobs exist in the national economy;

2. The District Court remand the case for the ALJ to explain how his conclusion that Claimant would be off task no more than 10% of the work period is supported by the record as a whole, including his rejection of the opinions of the medical professionals;

3. The District Court remand the case for the ALJ to conduct a review of Dr. Segal's opinion required by 20 C.F.R. § 404.1527(c);

4. The District Court remand the case for the ALJ to conduct a review of Dr. Delbridge's opinion required by 20 C.F.R. § 404.1527(c);

5. The District Court order the ALJ to order a consultative exam of Claimant if, after conducting proper reviews of Dr. Segal's and Dr. Delbridge's opinions, the ALJ concludes the medical evidence in the administrative record still does not address Claimant's current limitations; and

6. The District Court order the ALJ to incorporate Claimant's new RFC into hypotheticals to the vocational expert if, after conducting the above analyses and/ordering the consultative exam, the Claimant's RFC changes.

The parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the District Court of any portion of the Report and Recommendation as

well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** this 12th day of February, 2019.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa